## CONTRACT TO TURN OVER STOCK OF GOODS TO TRUSTEE TO PAY DEBTS CONSTRUED AS AN EQUI-TABLE MORTGAGE.

Common Pleas Court of Richland County.

FIRST NATIONAL BANK v. O. H. HIBBARD ET AL.

Decided, December 8, 1916.

*Debtor and Creditor—Insolvent Merchant Turns Over Stock to Creditor as Trustee to Pay Debts—Money Advanced by Said Creditor for Compromise of Claims—Debtor Subsequently Goes Into Bankruptcy —Nature of the Trustee-Creditor's Claim—Debtor Denied Right to Exemptions.*

1. A written agreement between a creditor and an insolvent merchant, who with his wife waived their homestead and other exemptions, by which (1) the creditor advances a certain sum of money to compromise and settle the claims of other creditors, (2) a trustee is appointed to take over the store stock, book accounts and all assets belonging to the business, and (3) conduct the business, (4) convert the stock into money and pay the money advanced, the debt due such creditor, expenses of the trust estate and return the balance to the debtor, is in the nature of an equitable mortgage against the proceeds of which no claim for exemptions will be allowed, and enforcible between the parties in equity.

2. The fact that the debt of creditor is evidenced by promissory notes affords no right under the contract to enforce payment by an action at law either before or after voluntary bankruptcy proceedings instituted by the debtor.

3. The fact that a few minor claims of three creditors had not been settled and paid and in all probability would have been taken care of if debtor had not filed his petition in bankruptcy, can not be permitted to aid debtor in evading the terms of such contract.

*Wickham & Martin,* for plaintiff.
*Long & Marriott,* contra.

MANSFIELD, J.

This is an action for an order fixing a lien or right of distribution to certain funds held by the trustee of the bankrupt estate of the defendant, O. E. Hibbard. The petition alleges in substance that the defendants, on September 23, 1915, were indebted to the plaintiff in the sum of $820 and also to other creditors in the aggregate sum of about $3,000; that said defendant, O. E. Hibbard, at said time was the owner of a stock of dry goods situated in the village of Greenwich, Huron county, Ohio; that on or about said date the creditors of said Hibbard were pressing him for payment of the obligations due them and that the defendants and plaintiff entered into an agreement in writing whereby it was agreed that the plaintiff should advance the sum of $750 to be used for the purpose of settling with the creditors of said defendant other than the plaintiff by paying to them 25 per cent. of their respective claims.

It is further provided in said agreement that one Clarence C. Bebout should be the trustee of the respective parties and that the stock of dry goods, book accounts and all assets belonging to said store should be turned over to said Bebout as trustee with full power and authority to conduct said business and to convert into money all of said stock and assets until the indebtedness due to the plaintiff should be fully paid, and that when said indebtedness and said sum of $750 and the necessary expenses of said trustee should be paid, said trustee should return to said defendants all assets then remaining. It was further agreed in said contract that said O. E. Hibbard and Pearl Hibbard expressly waived all their rights under the law of Ohio of exemptions in lieu of a homestead or otherwise. It is averred in the petition that upon the execution of the contract and its acceptance upon the part of the plaintiff and the acceptance of the trust upon the part of said Bebout said stock of goods and assets provided in said contract were turned over to said Bebout, who entered into possession of the same pursuant to the terms of said contract; that plaintiff advanced the sum of $750 as provided in said contract and that the same was applied in making settlement upon the basis of 25 per cent. of

their claims with all the creditors of said O. E. Hibbard scheduled by him to said plaintiff except two or three small creditors, which claims were in process of adjustment at the time of the filing of a petition in bankruptcy by the defendant.

Plaintiff avers that it performed all of the conditions of the terms of said contract upon its part to be performed, that said Bebout, as trustee, took possession of said stock of goods, reduced the same to money, and that the said O. E. Hibbard and Pearl Hibbard became employees of said trustee under the terms of said contract and participated in the selling of goods and their conversion into money as provided by the terms of said contract.

Plaintiff further avers that on January 3, 1916, the defendant, O. E. Hibbard, filed a voluntary petition in bankruptcy and on said date was by said court duly adjudged a bankrupt; that after the adjudication in bankruptcy said trustee had in his hands as the trustee of said stock of goods, after paying to plaintiff the sum of $750, so as aforesaid advanced under the terms of said contract, the sum of $745.19, which it was agreed between the parties might be turned over to the trustee in bankruptcy, subject to all the liens and rights both of plaintiff and these defendants; that the defendant, O. E. Hibbard, has filed with the referee in bankruptcy his claim for the sum of $500 in lieu of a homestead and that out of moneys in the hands of said trustee the referee has ordered that the sum of $500 be set aside as an exemption to O. E. Hibbard in lieu of a homestead, but reserving to said plaintiff the right to assert its claim against said exempt property in a state court. Plaintiff then avers that the $820 referred to in the first instance as owing originally by the defendants to the plaintiff are evidenced by four promissory notes, one of $100, one of $200, one of $400 and another one of $100. That all of said notes are wholly unpaid with interest and each and all are long past due.

Plaintiff avers that said defendants are wholly without right either in law or in equity to claim the sum of $500 or any sum in lieu of a homestead or otherwise out of said funds still in the hands of said trustee in bankruptcy, and by reason of

said facts are estopped so to do; that by virtue of the premises the plaintiff is entitled to a lien upon said sum of $500 in the hands of said trustee, set apart as exempt by said referee, for the payment of plaintiff's claim; that by reason of said adjudication of bankruptcy plaintiff can not bring an action against O. E. Hibbard for a money judgment and it is without adequate remedy at law and its only remedy is by appeal to the equity powers of this court; and plaintiff prays for an order or decree subjecting its right in and to said fund to the satisfaction of its claim as against any claim made by said defendants for an exemption by way of a homestead.

Defendants by their answer admit substantially all the material facts set forth in the petition except the allegation that there is but one creditor with whom settlement had not been made, which is denied, and also deny that the trustee at the time of the adjudication in bankruptcy had the sum of $750, but avers that the stock of goods was sold some time afterward by said Bebout without any order of the court, but admit it was agreed between the parties that the money received by said plaintiff and said Bebout might be turned over to the trustee in bankruptcy subject to the rights of the parties hereto.

There are some other denials in the answer and it may be inferred fairly from the pleadings that they deny the claim or averment in the petition as to the effect or construction which plaintiff puts upon a certain clause of the contract with reference to the waiver of a homestead exemption of the defendants.

The case was tried substantially upon an agreed statement of facts and there is no dispute as to any material fact growing out of the issues presented by the pleadings, so the question becomes one wholly of law for the court to determine from the undisputed facts in the case.

The defendant contends that this court is without jurisdiction to grant the relief prayed for for the reason that before any relief could be granted to the plaintiff, if it is entitled to any relief, that it was first necessary for it to proceed in a court of law prior to the bankruptcy proceedings to secure a judgment against the bankrupt, and cites upon the proposi-

tion several federal decisions to sustain their contention. Most of these decisions, as the court reviewed the briefs of counsel for defendants, are causes arising under the Constitution and laws of Alabama, and in going over the brief of counsel anl the citations therein referred to, the court has no doubt that the same are sound and are applicable to the facts as presented in those cases under the Constitution and laws of Alabama; but I can not see how they have any application to the case at bar. In the first place, the rights of these parties should be determined by the terms of the contract which they have solemnly entered into, if their rights can be clearly determined and ascertained, and the contract is one which is valid between the parties and valid under the law. By this contract each of the parties voluntarily consented to a certain course of action and conduct with reference to their respective rights. The plaintiff bank was to advance the sum of $750 in order to effect a settlement with the various creditors of the defendant, which settlement if carried out upon the basis stipulated would be of great benefit to the defendant. And the bank, as to its antecedent claim of $820, was to be postponed until the creditors were taken care of upon the basis named in the contract, and then the bank was to be paid and the balance, after paying the expenses, etc., was to be turned over to the defendants. There was nothing illegal in this arrangement. There were possibilities of mutual advantage to each of the parties to the contract if the same was carried out in good faith. The defendant, on one hand, would be cleared of his indebtedness and a possibility of the bank receiving a part or all of its antecedent debt and a further possibility that after all the debts were cleaned up that the defendants might receive a substantial sum after all the obligations had been settled. The very nature of this contract precluded the plaintiff from bringing an action at law upon its notes of $820 so that it might secure a judgment at any time during the period the contract was in force. In other words, it practically, by this contract, estopped itself from a proceeding at law to take a judgment upon its notes while the contract was being executed, and to this arrangement the defendants consented; and if the bank had undertaken to enforce by judgment

it would have been unquestionably a breach of the contract upon its part. So that the argument suggested that there was an adequate remedy at law upon those notes prior to the adjudication in bankruptcy after this contract was entered into I do not believe is well taken; and it is well settled that under the bankruptcy law after the adjudication of the defendant, Hibbard, as a bankrupt, no action at law could be maintained by the plaintiff against the defendants on these notes.

So far as a question of jurisdiction is concerned, it is very clear to this court that the only remedy is one in equity.

Now, it appears that the referee in bankruptcy, upon the hearing of the application of the bankrupt and his wife for exemptions under the authority of the federal decisions upon that subject, held that, upon the showing made by the plaintiff, the First National Bank of Greenwich, Ohio, claiming that the exemption of the defendants had been waived by them, it was a matter that should be referred to the state courts for determination, and that an opportunity would be given to the bank to try that question in the state court before the bankrupt should be discharged, and a reasonable time was given for such purpose; and consequently this action was brought, and the whole question is what effect should be given to that stipulation in the contract providing for a waiver of homestead exemption by the defendants, O. E. Hibbard and Pearl Hibbard.

It might be well to review the acts of the parties with reference to this contract as disclosed by the agreed statement of facts and the natural inferences to be drawn therefrom. There is no question but what the parties entered into this contract in absolute good faith and there is no question but that the plaintiff, the First National Bank, substantially performed all the terms and conditions of the contract upon its part to be performed; that if any of the creditors were not settled with, and I believe there were three whose claims were less than the sum of $100; it was caused by the defendants in filing a voluntary petition in bankruptcy and not from any act or omission upon the part of the plaintiff.

It also clearly appears from the evidence that the defendants proceeded to execute this contract, that they accepted

employment and received their pay and compensation as employees of the trustee who was placed in charge of the business to do the things provided for under the terms of the contract, and it further appears that the only reason why the contract was not fully executed and its terms carried out specifically was because it was interfered with wholly by the act of the defendant, Hibbard, by going into voluntary bankruptcy. Now, then, what was the effect of this contract in the first instance. It was a transfer or sale, we might say, of all the property of the defendant, the dry goods store in question, to Mr. Bebout as a trustee, and possession was given by the defendants to said trustee in pursuance and to effect the purposes of said transfer or sale. When Bebout took possession of the goods, so far as a transfer was concerned it became an executed contract and the rights of the parties were determined and fixed and the rights of either subsequent thereto were to be determined wholly upon whether or not the trust was executed in accordance with the terms and conditions of the contract. Now, then, the agreed statement of facts clearly indicates that the trustee whom the defendant placed in possession of this property fully and substantially executed this trust. Under its terms the defendants agreed to waive, so far as the First National Bank is concerned, their right to a homestead exemption or otherwise in any of the proceeds arising out of the sale of the property, and that is as between the claim of the First National Bank either of its prior debt or the new debt created in pursuance of the contract created for the purpose of carrying out the terms of the contract.

In my view, this contract between the parties was in the nature of an equitable mortgage; that is, it has all the character and indicia of a mortgage of chattels which would be absolutely good as between the parties even though it would be invalid as against general creditors. It might be said that it was uncertain as to whether or not it would effect a material benefit to the bank on its antecedent claim of $820 against the defendants. To do that it had to depend upon the results coming from the complete execution of the contract which might be of benefit depending upon the circumstances and success

in handling the business in the sale of the goods under the terms of the contract. During all the period, however, of its execution the defendants were absolutely protected in that they were receiving employment upon a salary agreed as satisfactory to them and their compensation would not depend upon the success of the new undertaking but was simply limited as to them depending upon how long it took to execute the contract. The contract was founded upon a sufficient legal consideration, it having all the character and indicia of a chattel mortgage or of a transfer of property to carry out the purposes of the contracting parties; it was absolutely good as between the parties and the waiver of the homestead exemption contained therein must be held to have the same force and effect as it would in any chattel mortgage or instrument wherein there was a sufficient consideration.

Another thing that appears to the court, and that is, it would be very inequitable to permit the defendants now to take advantage of the bankruptcy act in order to avoid the plain obligations and terms of their contract. It is very evident from the circumstances as disclosed that there existed no reason for the defendants to go into bankruptcy at all, that the three remaining claims that were unsettled were of minor importance and would have been taken care of by the trustee of the parties under the terms of the contract, and that the filing of the petition in bankruptcy by the defendant was done wholly and solely for the purpose of evading the solemn obligation that he had entered into, and of his wife; that as against the claim of the bank and for the consideration therein named they had waived their right of homestead exemption. Therefore, without referring or trying to analyze the various authorities cited by counsel —I have gone over the briefs very carefully, read the cases upon the facts of this case peculiar in themselves but very plain and easy to understand as applied to well known principles of law—I am clearly of the opinion that the plaintiff is entitled to the order prayed for in the petition, and a finding and decree may be had in conformity thereto.